# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              Case No. 92-80236

FELIX WALLS,

    Defendant.
                                              /

## OPINION AND ORDER DENYING GOVERNMENT'S MOTION TO REDUCE TERM OF IMPRISONMENT TO TIME SERVED

On February 20, 2003, the court sentenced Defendant Felix Walls to life imprisonment, with five years of supervised release required in the event he were ever released. Now before the court is a motion filed by the United States of America, specifically the Director of the Federal Bureau of Prisons (the Government), to modify Defendant Felix Walls's term of imprisonment, reducing it to "time served," or about 22 years. The relevant statute requires that the court find factual support in "extraordinary and compelling reasons [to] warrant such a reduction." 21 U.S.C. § 3582(c)(1)(A)(I). No hearing is required. E.D. Mich. LR 7.1(f)(2).

Typically, a court may not modify a sentence that has been imposed, absent specific, unusual circumstances. The Government brings this motion seeking what is commonly referred to as "compassionate release" as allowed under 21 U.S.C. § 3582(c)(1)(A)(I). Section 3582 provides that:

    The court may not modify a term of imprisonment once it has been imposed except that—

> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure;

"[T]he phrase 'extraordinary and compelling' generally applies only to inmates who had been diagnosed with a serious and terminal medical condition." *Green v. Marberry*, No. 06-CV-12410, 2010 WL 2680554, at *2 (E.D. Mich. July 6, 2010) (citing *United States v. Maldonado*, 138 F.Supp.2d 328, 333 (E.D.N.Y. 2001). The court acknowledges that other circumstances as well may present a persuasive case of "extraordinariness." Here, in support of its motion, the Government has submitted a one

2

and-a-half page, five-paragraph motion. The only justification for the requested relief is stated in one cursory paragraph:

> Mr. Walls is 75 years old and has served over 22 years of his term of imprisonment. He has a history of Parkinson's disease, osteoarthritis, sciatica, and cardiovascular disease. In addition, he uses a wheelchair to ambulate and requires assistance with his instrumental activities of daily living. Accordingly, he is considered to be experiencing deteriorating physical health that substantially diminishes his ability to function in a correctional facility.

(Dkt. # 705, Pg ID 7222.) No further support was submitted with the motion, nor has there been any supplementation since the motion was filed. No supporting medical records have been provided. No affidavits of Bureau officials or doctors have been offered. The court is left with only a bare statement that amounts to noting that the Defendant has over the course of years advanced in age and now suffers from some forms of ill health associated with advancing age. The court is less than overawed by these asserted bases for immediate release.

Assessing the allegedly extraordinary nature of the Defendant's ailments, the court is left to guess at the seriousness of Defendant's conditions. Though the court is hesitant to travel too far down the path of supposition, the court will start with, at least facially, the most serious of Defendant's conditions: Parkinson's disease. The court notes that the Government states only that he has "a history of Parkinson's," without any details provided as to the stage or symptoms of his alleged condition. While the court acknowledges that Parkinson's is not an insignificant disease, it is commonly known that people diagnosed with Parkinson's can hold jobs, function in society, and take care of themselves, depending on the stage of the disease. Indeed, Janet Reno,

3

Attorney General in the Clinton administration, served actively while suffering from advancing Parkinson's symptoms. The court is aware of judicial colleagues, both federal and state, who carry a caseload while at the same time dealing well with the effects of a Parkinson's diagnosis.

Parkinson's is not, in itself, an "extraordinary" circumstance. The Parkinson's Disease Foundation states that "as many as one million Americans live with Parkinson's disease, which is more than the combined number of people diagnosed with multiple sclerosis, muscular dystrophy and Lou Gehrig's disease. Approximately 60,000 Americans are diagnosed with Parkinson's disease each year."[1] The court notes that its effects could escalate to such a level as to justify the term "compelling," but there is nothing before the court supporting such a determination at this point.

Likewise, Defendant's other stated conditions are relatively common in people of Defendant's demographic. The National Institute of Health states that, of persons ages 65 or older, almost 50% report doctor-diagnosed arthritis. Osteoarthritis is the most common form.[2] Generally, the clinical course of acute sciatica, while painful, is favorable "and most pain and related disability resolves within two weeks."[3] With respect to his vague "cardiovascular disease," the court finds that it, too, is relatively common. Taking notice of Defendant's racial demographic, African American, and coupling that observation with a report of the American Heart Association that "[n]early half of all African-American adults have some form of cardiovascular disease, 48

---

[1] http://www.pdf.org/parkinson_statistics
[2] https://www.cdc.gov/arthritis/data_statistics/arthritis-related-stats.htm
[3] *Diagnosis and treatment of sciatica.* B W Koes. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1895638/

percent of women and 46 percent of men"[4] leads the court to conclude that Defendant's cardiovascular situation is not unusual in the least.

There are, of course, many forms of cardiovascular disease, but no specifics as to Defendant's condition are provided.

Finally, even if the court were to be persuaded that Defendant is utterly confined to wheelchair ambulation, the fact remains that in contemporary society, using a wheelchair is hardly "extraordinary" nor is it a "compelling" reason to justify release. Many people, young and old, whether incarcerated or freely about in the community, can carry on their daily activities while using a wheelchair.  Again, while the court does not make light of any of these conditions, individually or cumulatively, the court only points out that merely stating that Defendant allegedly suffers from these conditions, without further evidence or even explanation as to the degree or seriousness of any of them, is not enough to justify the extraordinary relief sought here.  Defendant was sentenced to life imprisonment.  That carries with it the implied acknowledgment that the ailments of age and deteriorating health may surface during incarceration.  Not every aging inmate who is in poor health deserves a reduction to his term of imprisonment.

Moreover, even if the court were to find the "extraordinary and compelling reasons" warranting a reduction, the court would next turn to the sentencing factors set forth in 18 U.S.C. § 3553(a) to consider whether those factors also support a reduction. The Government offers no analysis of those factors in the instant motion, but in its 2006

---

[4] https://www.heart.org/idc/groups/ahamah-public/@wcm/@sop/@smd/documents/downloadable/ucm_470704.pdf

resentencing memorandum, the Government argued quite persuasively for life imprisonment:

> An analysis of the factors contained in 18 U.S.C. § 3553(a) confirms the reasonableness of the Guideline calculation. The first factor, the nature of the offense and the defendant's characteristics, clearly support a life sentence. The offense involved hundreds of kilograms of cocaine which generated millions of dollars in profit for Mr. Walls. As to defendant's characteristics, the record is clear that Mr. Walls believes for a variety of changing reasons that the law does not apply to him. He has constantly challenged this court's jurisdiction based on whatever nonsense theory is making the rounds of the jails via the tax protester movement. Instead of concentrating on giving this court some reason to not reinstate his life sentence, he has spent most of his time since the reversal of his original sentence chasing an illusion that the 1970 Controlled Substances Act was not properly passed by Congress. He also has referred from time to time to his claim that this court (and by extension all federal courts) have no appropriate statutory or Constitutional authority. The only thing that is clear in these various claims is that, in defendant's world, justice means that he can do whatever he wants and that there is no legal authority to stop him from doing so.
>
> It is also clear that the defendant either hears what he wants to hear or is willing to make it up as he goes. Thus, on three occasions he has brought motions claiming that at least two court reporters have deleted portions of the record in order to insulate alleged judicial errors from review. In all three instances, the "deleted items" were a product of the defendant's imagination.
>
> In his trial testimony, defendant took pride in his ability to make a fortune from his heroin sales in the 1970's and from what was clearly a fraudulent bankruptcy scheme in the 1990's. He has further expressly stated that he will not file or pay income taxes. Thus, the characteristics of defendant are those of an individual who is not willing to conform his conduct to the requirements of the law.
>
> ***
>
> Finally, and perhaps most significantly, the defendant has made it clear that he does not intend to conform his conduct to the law. Whether it involves fraud, tax evasion, drug dealing or some other offense, defendant's conduct over his adult lifetime and his own statements to this court indicate that, if he is ever released from custody, it is virtually certain

> that he will commit further crimes. The public requires that it be protected
> from this inevitability.
>
> Accordingly, . . . the Government contends that a life sentence in this case
> is reasonable and should be imposed by this court.

(Dkt # 606, Pg ID 4921-23.) et seq.

At sentencing, the court explained that Defendant had a "very lengthy, almost lifetime devotion, to the pursuit of the criminal objectives" and a "blatant ... disregard for societal norms for the laws of the United States" and stated that it would be "better for society for Mr. Walls to spend his remaining years in a secure environment in the federal institution where he will be in large measure, if not completely, restrained from preying upon others as he has done for just about all of his adult life when he was not imprisoned." Upon review of Defendant's challenges to the court's life sentence determination, the Court of Appeals affirmed:

> The district judge also explained that a life sentence was appropriate given Walls's lengthy criminal career and "blatant ... disregard for societal norms." J.A. at 275 (Resent. Hr'g Tr. 8/1/06 at 45). Given this thorough explanation, it cannot be said that "the district court select[ed] the sentence arbitrarily, bas[ed] the sentence on impermissible factors, fail[ed] to consider pertinent § 3553(a) factors or g[ave] an unreasonable amount of weight to any pertinent factor."

*United States v. Walls*, 546 F.3d 728, 737 (6th Cir. 2008) (quoting *United States v. Caver*, 470 F.3d 220, 248 (6th Cir. 2006))

The substance of the instant motion is to inform the court that Defendant, now age 75, has accumulated age-related ailments that appear to be entirely common among men of his age (perhaps especially African American men with respect to heart disease). All of this presents a picture of ordinary rather than "extraordinary" circumstances. The Government's incisive 2006 sentencing memorandum explained

7

clearly the Defendant's history, anti-social attitude, and the risk to society of Defendant's potential release. The docket is virtually overflowing with obstreperous and irrelevant motions, requests, and objections filed personally by Defendant and illustrating the continued validity of the Government's 2006 sentencing memorandum reference to "nonsense theories."

There is no indication from the Bureau of Prisons that any of the antisocial characteristics documented in the Government's memorandum have abated or been addressed in the last 22 years. The court has been given no assessment of the Defendant's adjustment, no counselor's reports, and no disciplinary history for good or for ill.  The statements in the Government's motion, terse and formulaic as they are, leave the court unsatisfied and unpersuaded.

In the judgment of the court, it continues to be "better for society for Mr. Walls to spend his remaining years in a secure environment in [a] federal institution." There exist no extraordinary and compelling reasons warranting a reduction that would lessen the lifetime sentence originally imposed.  Accordingly,

IT IS ORDERED that the Government's "Motion to Reduce Term of Imprisonment to Time Served" [Dkt. #7222] is DENIED.

 s/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  February 23, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 23, 2018, by electronic and/or ordinary mail.

                                        S/Lisa Wagner
                                        Case Manager and Deputy Clerk
                                        (810) 292-6522